Her argument first, in number 2011-1325, CEPHALON v. WATSON PHARMA. Ms. Chaikin, when you're ready. Good morning. May it please the Court, my name is Carolyn Chaikin of WilmerHale representing plaintiff's appellant CEPHALON. I would like to reserve three minutes of my time for rebuttal. Very well. Thank you. The evidence relied upon by the district court here in holding that the 604 and 590 patents are not enabled is insufficient to meet Watson's difficult burden of proving the patents invalid by clear and convincing evidence for at least three reasons. First, the testimony of Watson's expert Dr. Mumper was not only equivocal and unfounded, but it was based on a highly unlikely embodiment of a liquid acid source like orange juice. Second, Dr. Mumper's testimony was directly rebutted by Dr. Williams, CEPHALON's expert, who testified without contradiction that the patents enabled at least two other modes of co-administration that would be much more straightforward, namely a second tablet or a film. That evidence was not at all rebutted or addressed at all by Watson. Now, the problem here, I take it, is that the enablement doctrine or the portion of the enablement doctrine that the trial court was focusing on, and that is the issue before us, is the portion that says that the invention must be enabled across the entire scope of the claim. It's not good enough simply to enable one portion of the entire spectrum of what is claimed and then say, well, I'm done. So the question is, since this claim does appear to incorporate the subject matter of a one-compound effervescing agent, what is there that we can look to in the specification that enables that portion of the entire spectrum of the claim? Well, it's important to distinguish that what is the scope of the claims under the district court's claim construction is a single compound that, when combined with another agent, whether it is in the same tablet or drug formulation or outside of that tablet, would produce an effervescent reaction. So the district court's construction does contemplate two reactants, both an acid and a base. Just the difference here and the scope of the claims that needs to be enabled is the ability to co-administer an acid source from an external location. So here, we would concede that there is no specific disclosure of a co-administration in the patents. However, there is plenty of disclosure in the patents regarding the novel aspect of these patents. The novel aspect here is using effervescence, once it's created, to improve absorption across the oral mucosa. The novel part is not creating effervescence. The parties completely agree that effervescence is an old concept. It was very well known in the art, something that persons of skill would be able to routinely experiment with because it was well known for over 40 years. That aspect is, from what we can tell, the only thing that Watson seems to think is missing here. How do you activate the base component in the tablet with an external acid source? What I understood Dr. Mumford to be saying, in effect, was that we know how effervescence works, but what we don't know is how you would go about putting the tablet in your mouth, keeping it in your mouth for long enough to add whatever acid source from outside was added and hold that in the mouth for some period of time necessary to produce the level of effervescence necessary to enhance absorption. So why is that not a problem, given that the district court credited Dr. Mumford on that? Well, certainly the burden rests with Watson to prove that co-administration is not enabled without undue experimentation. So Watson's evidence is what we're looking at here. Here, Watson's expert, Dr. Mumford, focused on a liquid acid source, which admittedly would have some difficulties, including what Watson pointed to as potentially swallowing it. Those are the aspects of the administration that Watson contests here. Here we have undisputed testimony from Dr. Williams that one in skill in the art could simply look at the formulations, which are clearly in the patent. There's at least four formulations mentioned in columns six and seven. It lists exact amounts of citric acid and bicarbonate that could be used in a single tablet. And Dr. Williams said, without any contradiction, well, you've got one tablet here. Why don't you just break out the acid into a second tablet, hold it in the mouth with the drug component, the drug tablet, and use effervescence? It would effervesce in that way. There is no dispute that the use of effervescence in that manner is disclosed throughout the patent, how much effervescence you need in order to improve absorption, what target pH you want to try to reach. That is disclosed in the patent. Where to hold it in the mouth so that you can improve absorption across the various oral mucosal cells. All of that is in the patent. That's relating to the use of the effervescence once created. Watson seems to be focused on how you actually get the external acid source to activate the base. And that is precisely the type of information that would be well-known by one of skill in the art, who has worked presumably with effervescence, knows how to create, how to calculate the amounts of effervescence that might be needed if they didn't use these particular formulations here. And that would be involving no more than merely routine experimentation, if any, in order to simply administer a second tablet with the acid component so that it would effervesce. I don't think the parties dispute at all that a single comp or a single tablet that had both the acid and the base would be enabled by the specification. The only difference here is what if you pop out the citric acid and put it in a separate source. And as far as the credibility of Dr. Mumper goes, I don't think that this can be viewed as simply a battle of experts for at least two reasons. The district court specifically did not in any way say that the credibility or the demeanor of the witnesses, be it Dr. Williams or Dr. Mumper, was more credible one or the other. The district court seemed to credit Dr. Mumper's opinion simply because it assumed without any support from what we can tell in the opinion that merely partnering with a clinician would necessarily involve undue experimentation. There's no support in the record for that. Dr. Mumper didn't say so. There's no evidence. And in fact, Dr. Williams' uncontradicted testimony stated that part of the very definition of a skilled artisan is to work with clinicians for precisely this drug formulation as well as clinical testing. So that's one reason. In addition, the district court seemed to add additional credence to Dr. Mumper's testimony by relying on a clearly erroneous interpretation of what the inventors, Dr. Pother and Dr. Hans, had said in their testimony during deposition. Now, the court seemed to be— During deposition. Sorry? Possession. Oh, during deposition. Sorry, sorry. The district court seemed to think that the inventors had testified that they had not enabled a drug formulation that contained only one half of an effervescent couple. But that's not at all what they said. They simply said that the only ways they knew of to create effervescence involved two halves of an effervescent couple, both the acid and the base. That's not disputed by the parties here. Certainly you need two components, the acid and the base, to get effervescence. That's, in fact, implied in the district court's claim construction, which incorporates the idea of an other reactant being present outside or through co-administration. So here it wasn't that the inventors said anything that they hadn't enabled a drug formulation that didn't contain both. Well, but I think Dr. Williams, did he not admit that there was nothing to that effect in the specification, saying that this is the way you do it if you only have one agent in the patent? I think Dr. Williams testified that there is no specific disclosure in the patent about co-administration and co-administering a separate acid. I mean, Watson itself does seem to concede, I believe it's page 43, Watson seems to concede that some level of co-administration would be enabled by the specification. They say at 43 here, with respect to Dr. Williams' testimony, that there is, or is it, yeah, he said Dr. Williams focused on matters of which there was little controversy, such as that the specification would teach that one would try to co-administer a reactive compound, such as something containing citric acid or another soluble acid. So Watson is actually conceding that the specification here would allow one to co-administer a separate acid source, and in fact that one would, one of skill in the art, would be able to use simple mathematical calculations. Is that what the specification says? The specification does not specifically say, you know, break out the acid component. And that's the problem, isn't it? I mean, it's a description in the specification. Well, we don't, so there is a distinction in this court's case law about what needs to be disclosed in the specification for an enabling disclosure. The main important thing that needs to be disclosed is anything that is novel. The novel aspect of the patent must, of course, be disclosed in the patent specification. Here, you know, and this court has held repeatedly that that which is well known in the art need not be disclosed and is preferably omitted from the specification. So here we have a situation in which the component that is missing, the only component that might be missing, is getting that acid and base to create effervescence. And creating effervescence was, as the parties agree, very well known and something that one of skill in the art would know and could supplement what is in the specification. So the specification need not disclose anything more on that matter. But the specification limits to a pair, to a base and an acid. No, I mean, the district court actually found in its claim construction that the specification and the patent enable the scope of the claims to include a single compound that when combined with an external acid source could have... Isn't that the problem that the claim construction broadened the specification or broadened the patent? Well, yes. And that's your enablement problem? Well, I agree that there wouldn't be the dispute that we're having right now on enablement if the district court had adopted Watson's claims construction that an effervescent agent must include both halves of the effervescent couple. Here, the district court found that the specification includes, or that the claims include, the scope of a separate acid source being co-administered in order to create the effervescence necessary for the invention. And therefore, that is why we're disputing at this point whether or not that separate co-administration is enabled. Here, we would argue that there was unrebutted testimony that at least two embodiments of that co-administration scope were enabled. Dr. Williams testified without any dispute that a second tablet or a film would be something that was well within the reach of a skilled artisan. And Dr. Mumper did nothing to rebut that. There was no cross-examination on any embodiments other than orange juice. So here we have a situation where the experts are literally talking apples and oranges. Dr. Mumper was talking about orange juice, which is highly unlikely, and would certainly have some more attendant complications, if you can even call it that. But that even Dr. Williams said would be able to be determined through routine experimentation. But Dr. Williams was focusing on these other two embodiments, the second tablet that simply uses the amount that were in the patent of citric acid and just breaking that separate component up. Okay. I see I'm into my rebuttal time. Would you like to save it? Yes, thank you very much. I will save it for you. And Mr. Ostrowski. Thank you, Your Honor. Jim Ostrowski from Crowell & Mooring for Watson, the appellee. It's a pleasure and an honor to be here again. It is correct that the claim construction Cephalon sought and obtained has created their enablement problem. That's correct. And in addition, with respect to infringement, counsel didn't go into it, but a label is not an analysis, and it's quite clear, and I am prepared to bring the court through this, that the district court did a literal infringement analysis and looked at the key limitation, which is effervescent agent in an amount sufficient to improve absorption as construed and found there's no evidence to support that limitation. That is literal infringement. And then because of an argument that they made, which under this court's law is legally flawed, focusing on equivalence relating to infringement, the court considered whether that in a DOE analysis would change anything, and the court said no, and I'm willing to bring the court through that. But let me focus on enablement to start. I take this from the reply brief. Maybe you won't agree with this, but I got the impression that the infringement issue has taken very much a back seat in terms of the practical importance of this appeal. Is that correct, or is that your view? That's not correct. I think, Your Honor, that there was another case and another patent, but that patent dealt with a solid solution technology, and it's well within my client's rights to redesign its product, to remove any solvent, and so there wouldn't be a solid solution. And so this is still a very real, both are real issues for us, Your Honor. Okay, that's fine. Okay. And so on enablement, it is correct. The issue here is the court's case law on the full scope needs to be enabled. They've gotten a claim scope which includes co-administration. It's admitted that co-administration is not in the spec. There are no working examples. Mr. Strong? Yes. My problem is that the district court, as it's evidence of undue experimentation, is Dr. Mumper's testimony. And in reading it, it seems to me that his testimony on that is conclusory. It consists of a series of conclusory statements. How do you deal with that? I deal with this, Your Honor. First, Dr. Mumper addressed the issue of the kind of experimentation that would be needed given the nature of this. He said there would be questions. There would be questions. And so specifically, Your Honor, if we go to transcript 1184 through 1186, which is A6337 through A6338, Dr. Mumper was asked, and do you have an opinion that if the Cephalon claim construction of effervescent agent is applied, which would allow a simple compound effervescent agent, do you have an additional opinion with respect to regarding whether or not the claims would be enabled? So this is a response not specific to orange juice. It's specific to co-administration generally. And he says, in my opinion, the claims would not be enabled. And he talks about both patents. Do not teach that or enable that. I think, in my opinion, not only are they not taught or enabled, I think it would be a new patent. I think it would involve the formulation of fentanyl with some couple in a tablet that would be administered into the mouth and must react with some externally applied acid that I think would be very difficult. I think that would also, in my opinion, not be a scientifically prudent approach in terms of what we are trying to accomplish. And again, this is the nature of the invention. This is what he's focusing on. I think this is the value of his testimony. Much of everything else applied to wand factors, the court applied, and it's in the record, most of which is not disputed. He says that by mixing, he said, what you're trying to accomplish is rapid onset, dissolution of the fentanyl, increasing the absorption, that by mixing something else in the mouth, that would be defeating the purpose. So he's saying it's this co-administration, which admittedly, no working examples, not in the spec, not taught in the spec, is a new patent, it's a new method, because here the nature of this invention is not simply effervescence generally. We don't concede what counsel said we concede, but we do admit that they argue that things that are not really that seriously disputed, that is that the patent discusses effervescence and you need an acid in the base. The problem here, the nature of the invention, is that you put it in the mouth. Ventura, the working example, requires, this is also with cancer patients, they put it in the mouth of the buccal cavity and they're told to hold it there until it disintegrates, 14 to 25 minutes, and swallow after 30 minutes. So it's 14 to 30 minutes. This has to be held. It has to be activated by saliva. You need to have the acid in base in close proximity and activated over that period of time, not swallowed, kept in the same place, the buccal cavity under the tongue, sick cancer patients. It's not, what Dr. Mumford says, this is entirely different. It's a new patent, and that's valuable testimony, and that's not rebutted. What's rebutted or what they claim is what you could take here. I'm sorry, Your Honor, you had a question. Well, finish your point. I didn't want to interrupt you while you're responding to the question. Right, right. I'm essentially done. But what they contend is that the orange juice, or you could have an acid source that is suggested by the orange juice and you can figure out, from a chemical standpoint, if you have so much base, how much acid do you want? And you can do that. That's not the problem. Well, it's already been done, right, in the patent. The patent has examples that give you exactly the numbers that you would want to run if you had a single tablet that had both the acid and the base, right? Right. OK, so why does that not effectively enable, for example, taking two tablets, one of which is in bottle one and the other of which is in bottle two, and putting them right next to one another in your cheek and holding them there for 15 to 20 minutes? What is it that's missing there? I mean, the orange juice, I understand, that starts to get, maybe raise new questions as to the introduction of a liquid, but the difference between one tablet and two tablets escapes me. OK. The difference is the extended period of time. As Dr. Mumper said, you have two things you have to keep in the same place. Right, but the two tablets, let's say, by hypothesis, are each half as large as the tablet that you would take if you took one tablet. And you put them in your mouth at the same place you would put one tablet. Why does that make such a great leap forward or apart from the disclosed enablement that it must be said to be outside of what is the natural progression of the specification? That's an excellent question. And the reason is because it's in the mouth. And the reason is because you're trying to get buccal delivery through the oral mucosa over a 30-minute time period. It's not going in the stomach. They rely upon some art saying that there's in situ, that the prior art teaches the use of effervescence in situ when you take a carbonate product and it goes into the stomach, which is acidic, and that releases carbon dioxide. That's entirely different. What you're doing here is trying to create at a very small point in the mouth for a very long period of time an amount of carbon, not just carbon dioxide, but an amount of carbon dioxide that's width and that you can't move the tablets around. They probably need something to stick them together and I don't even know how that would work and there's no evidence that that works. And I think significantly, and the courts have looked at this, in the 12 to 14 years later, nobody's done this. There's no evidence this even could be done or is scientifically feasible. And I think it's inconsistent with the teaching of this patent specifically, which is rapid onset, you want quick dissolving, you want rapid effervescence, you want effervescence at a high level over a long period of time to achieve absorption. Isn't the two-tablet hypothetical that Dr. Bryson is posing, isn't that captured by the specification? It introduces both the base and the acid. No, it's not captured because the specification teaches putting both in a single formulation and holding that single formulation in the buccal cavity or in a place in the mouth for an extended period of time. If you were to take a film, or you were to take another tablet, or you were to take some drink or anything like that, the invention here is the method of administration, it's not the invention. It's the use of effervescence, and it's holding something in the buccal cavity or sublingually for 30 minutes. And to do that with multiple things in a patient, these patients have cancer, they have the sores in the mouth. Dr. Mumford said this is a different invention and it runs counter to the teaching and what you're trying to do with this invention. Let me ask you the question, again going back to my hypothetical and coming at it from a different direction. Suppose that the specification had had a sentence in it saying, well of course you could divide the acid and the base into two different tablets and administer them at the same time and achieve the same end, period. That's your disclosure. Do you think that that now would enable the one effervescent agent embodiment? I think it might be a little closer because they would meet one of the factors which is that it's disclosed. But I think ultimately the same answer is no. And it's not just because I represent Watson. The answer is no because it doesn't address the problem. The problem is a clinical problem. There's no clinical evidence in this patent. There are no studies on people showing you can do this. Dr. Mumford says it runs counter to what you're trying to do in this invention. Dr. Williams says, well you can calculate the amount of acid and base you need and you can go hire a clinician. But that doesn't address the criticism which is this is not what is being taught here in an invention that's designed for rapid onset through the buccal cavity but over a period of time holding it in place for 30 minutes. To what extent could we go back and look at the claim construction issue? Your Honor, if you were, I think you would go back and find that the claim construction requires a couple. But I think the court could do that. But if the court does not do that, I think it necessarily should find that the full scope of the claims are not enabled because co-administration in a method like this in an invention like this is not. But to be clear, nobody has asked the court to do that. No, but we do have the authority to do that. And the problem here is the enlargement of the scope because of the claim construction. That is the problem. So if the court were to fix that, we would not have an enablement argument, Judge. Okay. Unless the court wants me to bring it through the infringement analysis to show that the court applied a little infringement analysis, which I can, I think I'm done. Very well. Thank you. Thank you. You have two and a half minutes left. I had just a few points. First of all, the answer to Judge Bryson's question regarding the enablement of a two-tablet method of co-administration, what Watson's counsel was testifying, it finds absolutely no support in the record. This is just Watson's counsel's description of it. There's absolutely nothing in the record to indicate that holding two tablets or a tablet and a film in the mouth would be difficult, would require any more difficulty than simply holding a single tablet in the mouth. Nobody testified about that. And in fact, the second point is the quote that Watson's counsel brought out in terms of Dr. Mumper saying, I think that that would be very difficult, generally, is precisely conclusory testimony. There's no explanation as to why. There's no support as to why it would be difficult. He said, I think it would be difficult. It's very similar to his testimony regarding undue experimentation, which was equivocal in many, many respects. I think there might be questions. I think it would be difficult. I don't know. That's ultimately what he said. And all that we have here that Watson presented was Dr. Mumper's testimony on this highly unlikely embodiment that is equivocal, unfounded, and conclusory, and that is not sufficient to rise to the level of clear and convincing testimony or clear and convincing evidence sufficient to invalidate these patents for all time. In addition, there was nothing actually in Dr. Mumper's testimony to indicate why co-administration would run counter to the entire purpose of the patents, as Watson's counsel suggests. The novel aspect of the patent, as I described, is using the effervescence once created to help with improving absorption of a drug. And there are many disclosures in the patent about how you use that effervescence and where you put the tablet and how you hold it in the mouth. And that's there. The only missing piece that Watson contests or that Watson believes is missing is activating that base with a separate acid source. And there is undisputed testimony from Dr. Williams that at least two methods of doing that are enabled by the patents. Now, with respect to the language of the claim, the critical language is the reference to at least one saliva-activated effervescent agent. That's what really all this is about. Now, that came into the patent in the course of prosecution history, right? There was an amendment, if I recall correctly. This isn't really focused on in the briefs, but I take it that that's the way it made it. Was it clear at that time that this was intended to pick up the one-agent tablet in which another agent would be separately administered, or was that not the focus of the prosecution history? I don't believe that that was the focus of the prosecution history. I do believe there was prosecution history that the district court cited in its opinion indicating that agent meant a singular agent, whereas couple was used to refer to two different... Right, couple was the word that was typically used when they were putting both the S in the same tablet. Exactly, and that couple language was not used here. Specifically, the word agent was used, which is singular. But I don't believe that the actual method of co-administration was a focus during prosecution history. I see that I'm out of time, so I would just respectfully request that this court reverse the district court's decision on enablement or the very least remand for further consideration. And you continue to want a reversal on the infringement, but you've taken the position in your reply that that's of less significance at this point. Yes, that's certainly not our focus. I think it's still very much in place. Yes, I believe Watson is not contesting that that issue would be moved in any way. We are still contesting it, but we would also ask that at the very least there be a remand there because the district court failed to consider entire categories of evidence as a result of the incorrect assumption that we were arguing Dr. Equivalent infringement. Thank you. Thank you.  We thank both counsel. Thank you. Thank you.